UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 25 CR 614 |
| v. | ) | |
| | ) | Judge Sunil R. Harjani |
| GERALD PITTMAN | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Gerald Pittman is a ten-time convicted felon. Yet on July 28, 2025, police caught him riding a CTA train while drinking beer and toting a loaded gun. At the time of his arrest, defendant had absconded for approximately one year from a term of supervised release imposed by this Court and overseen by the Honorable Manish Shah. The government respectfully submits that a high-end Guidelines sentence of 41 months' incarceration, to be followed by three years of supervised release—which itself would follow a six-month consecutive sentence for the supervised release violation imposed by Judge Shah—is sufficient, but not greater than necessary, to accomplish the goals of sentencing under 18 U.S.C. § 3553(a).

## I. FACTUAL BACKGROUND

The offense conduct in this case is set out in the Presentence Investigation Report ("PSR"), the Government's Version of the Offense ("GVO") and accompanying exhibits.

On July 28, 2025, defendant rode the CTA blue line while drinking beer, smoking, and holding a red shopping bag. Inside the shopping bag was a loaded Colt Police Positive Special .32 caliber revolver bearing serial number L71938 (the "Colt

Revolver"). Defendant knew the Colt Revolver was in the bag and knowingly possessed it. At the time he possessed the Colt revolver, defendant knew that he had been convicted of at least one crime punishable by a term of imprisonment exceeding one year, and that he was serving a term of supervised release as part of his sentence for the convictions discussed below. Lastly, the Colt Revolver was stolen before defendant possessed it. *See* PSR ¶¶ 6-8.

## II.    PROCEDURAL HISTORY

On September 29, 2025, defendant was charged with a single count of knowingly possessing a firearm and ammunition after having been convicted of a felony offense. Dkt. 1. Defendant pleaded guilty to the sole count of the indictment on February 11, 2026. Dkt. 20. A sentencing hearing is set for May 19, 2026, at 1:30 p.m. *Id.*

After defendant pleaded guilty in this case, he admitted to violating the terms of his supervised release by, among other things, possessing a firearm and absconding from supervision for approximately one year. *See* No. 08-CR-741 (N.D. Ill.) (Shah, J.). For that and other violations (*see* PSR ¶ 41), Judge Shah imposed a sentence of six months' incarceration, to run consecutively to any term of imprisonment imposed in this case. *See id.* at Dkt. 118. Judge Shah did not impose any additional term of supervised release. *Id.*

## III.   GUIDELINES CALCULATIONS

As a matter of procedure, the Court "*must* begin [its] analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Peugh v. United States*, 569 U.S. 530, 541 (2013) (quoting *Gall v. United States*, 552 U.S. 38,

50 n. 6 (2007)). "Failing to calculate the correct Guidelines range constitutes procedural error." *Id.*

### A.     Offense Level

The government agrees with the offense level calculations set forth in the PSR. *See* PSR ¶¶ 13-43. Pursuant to Guideline § 2K2.1, the base offense level is 20, because the defendant committed the instant offense subsequent to sustaining a felony conviction for a controlled substance offense, namely his convictions in this Court for Distribution of a Controlled Substance. PSR ¶ 13 (citing No. 08-cr-741 (N.D. Ill)). USSG §2K2.1(a)(4)(A)). The base offense level is increased by two levels because the firearm had been stolen prior to defendant's possession of it. PSR ¶ 14. Defendant also receives a three-level reduction for timely acceptance of responsibility. PSR ¶ 20. Defendant's total offense level is therefore 19. PSR ¶ 21.

### B.     Criminal History Category

The government agrees with the PSR's determination that defendant receives three criminal history points and falls within criminal history category II. PSR ¶ 43.

### C.     Advisory Guideline Range

The government agrees with the PSR's determination that, with a total offense level of 19 and a criminal history category of II, the advisory Guideline range is 33 to 41 months' imprisonment, in addition to any supervised release and fine the Court may impose. PSR ¶ 102.

## IV.     APPLICATION OF THE STATUTORY SENTENCING FACTORS

Sentencing has four purposes: retribution; deterrence; incapacitation; and rehabilitation. *See United States v. Milbourn*, 600 F.3d 808, 812 (7th Cir. 2010). The

3

Court must impose a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a). In doing so, the Court must consider the statutory factors outlined in 18 U.S.C. § 3553(a)(1)-(7), including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and] (3) the kinds of sentences available.

*Id.* § 3553(a)(1)-(3). The Court must also respect "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," as well as "the need to provide restitution to any victim of the offense." *Id.* § 3553(a)(6)-(7). Finally, the Court must consider the Guideline range and any pertinent policy statements issued by the United States Sentencing Commission. *Id.* § 3553(a)(4)-(5).

## A.     Imprisonment

Considering the § 3553(a) factors, the government recommends a 41-month sentence of imprisonment, which is at the high-end of the Guidelines range. Such a sentence is necessary to protect the public, promote respect for the law, provide just punishment, and afford adequate deterrence, while also considering the nature and circumstances of the offense and defendant's history and characteristics.

4

1. **A 41-Month Sentence of Imprisonment Reflects the Nature and Circumstances of the Offense and Provides Just Punishment.**

The nature and circumstances of the offense support a high-end Guideline sentence. As an initial matter, defendant committed this offense after having absconded from court supervision for approximately one year. As this Court well knows, supervised release is designed to prevent defendants from endangering civilians by providing them with resources and keeping them under the watchful eye of the U.S. Probation office. Defendant did not merely violate the terms of his release—he completely abandoned the supervision process and then, by committing the instant offense, proved why it was necessary that he be under such supervision in the first place.

Beyond defendant flouting the terms of his supervised release, the circumstances of defendant's possession are troubling. Defendant was in possession of a deadly weapon while drinking alcohol, which heightened the danger of his gun possession.[1] What is more, defendant did not possess a gun in a private residence; he was carrying it in a shopping bag while riding on the L, where gun violence on has risen at an alarming rate in recent years.[2] Gun-wielding riders like defendant have

---

[1] *See* Johns Hopkins Bloomberg School of Public Health, Jul. 5, 2023, "New Policy Recommendations Aim to Address the Intersection of Alcohol Use and Gun Violence," *available at*, https://publichealth.jhu.edu/2023/addressing-alcohol-use-as-risk-factor-for-gun-violence ("Alcohol use and gun violence are leading causes of preventable injury and death in the U.S., and the issues are most deadly when they intersect.")

[2] *See* Illinois Policy Institute, "CTA Violent Crime Nears Decade High As Feds Threaten Funding Cuts," Oct. 14, 2025, *available at*, https://www.illinoispolicy.org/cta-violent-crime-nears-decade-high-as-feds-threaten-funding-cuts/

caused an increasing share of Chicagoans to fear for their lives when riding Chicago's public train system.[3] Indeed, defendant's offense—carrying a gun on a CTA train while impaired—is the type of behavior driving violent crime on public transportation, instilling fear in innocent transit patrons, and scaring countless others away from riding trains that are meant to serve everyone in this city.

In sum, a high-end of the Guidelines sentence is sufficient but not greater than necessary based on the nature and circumstances of the offense and the need for just punishment.

### 2. A 41-Month Sentence of Imprisonment Accurately Reflects the History and Characteristics of the Defendant.

The most pertinent aspect of defendant's history and characteristics is his recidivism, which necessitates a high-end Guideline sentence. *See Almendarez-Torres v. United States*, 523 U.S. 224, 243 (1998) ("recidivism is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.") (cleaned up); *United States v. Moreland*, 703 F.3d 976, 988–89 (7th Cir. 2012) ("anything that increases the risk of recidivism argues for a longer sentence").

Defendant was convicted of ten felonies before he was arrested in this case.[4] *See* PSR ¶¶ 33, 35, 41. His prior convictions include two felony counts of aggravated battery of a police officer, which stemmed from an incident in which defendant punched and elbowed two police officers. PSR ¶ 35. To be sure, that incident occurred

---

[3] The Harris Poll, Sept. 2024, *available at*, https://theharrispoll.com/articles/future-of-chicago-public-transit/ ("Two in five (42%) Cook County residents would use public transportation more if it was safer.")

[4] This does not include the juvenile convictions detailed in the PSR. *See* PSR ¶¶ 27-30.

when defendant was just 18 years old. But it is far from his only prior offense. Five years later, in 2010, defendant was convicted in this Court of six counts of distributing controlled substances. PSR ¶ 41. In that case, defendant admitted to selling a half-ounce of crack cocaine every day between 2004 and 2008. *Id.* Defendant's 2010 conviction in this Court also included one count of felon-in-possession of a firearm, the same offense defendant committed in this case. PSR ¶ 41; *see United States v. De Leon*, 140 F.4th 920, 923 (7th Cir. 2025) (affirming above-Guidelines sentence in part because defendant was repeatedly convicted of the same offense).

Further, defendant's criminal history reflects a running pattern: that he commits crimes while on court supervision. *See* PSR ¶¶ 33, 35-37, 40-41. It also bears mentioning that the PSR lists eight non-felony adult criminal convictions (PSR ¶¶ 31, 32, 34, 36. 37, 38, 39, 40), and eleven adult arrests not resulting in convictions (PSR ¶¶ 47-69). In light of defendant's extensive criminal history, including his high rate of re-offending while on supervision, a 41-month sentence is sufficient but not greater than necessary to reflect defendant's history and characteristics.

> **3. A 41-Month Sentence of Imprisonment Will Afford Adequate Deterrence and Protect The Public From Future Crimes of the Defendant.**

A high-end Guidelines sentence is needed to effect specific deterrence. As described above, defendant has time and again shown that Court supervision and other alternatives to incarceration do not suffice to deter him from committing further crimes. Most tellingly, defendant received a sentence of ***120 months*** from this Court, only to violate the terms of his supervised release repeatedly before committing another federal felony. PSR ¶ 41. At a minimum, a significant carceral sentence will

protect the public from future crimes by incapacitating him during the period of incarceration. *See United States v. Kluball*, 843 F.3d 716, 718 (7th Cir. 2016) ("incapacitation (physically preventing the defendant from committing crimes on 'the outside,' by imprisoning him) is an authorized factor for a judge to consider in determining the length of a prison sentence") (quotations omitted).

General deterrence is also needed to protect the public. An "important goal of sentencing is 'to afford adequate [general] deterrence to criminal conduct.'" *United States v. Warner*, 792 F.3d 847, 860 (7th Cir. 2015) (quoting 18 U.S.C. § 3553(a)(2)(B)) (second alteration in original); *see also United States v. McQueen*, 727 F.3d 1144, 1158 (11th Cir. 2013) ("[G]eneral deterrence ... is one of the key purposes of sentencing." (quoting *United States v. Medearis,* 451 F.3d 918, 920-21 (8th Cir. 2006) (second alteration in original))). This is especially true given the heightened prevalence of illegal firearms in Chicagoland in recent years. *See United States v. Severino-Pacheco*, 911 F.3d 14, 22 (1st Cir. 2018) ("Community-based considerations are inextricably intertwined with deterrence ... [and] the incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence.") (quoting *United States v. Flores-Machicote*, 706 F.3d 16, 21 (1st Cir. 2013) (alterations in original))).

Gun violations consume substantial prosecutorial resources each year. Of the 61,500 cases reported to the U.S. Sentencing Commission in fiscal year 2024, 8,131

(13.2%) involved firearms offenses.[5] Chicago in particular is facing an epidemic of gun violence. *See* University of Chicago Crime Lab, 2024 End-of-Year Analysis.[6] And crimes like defendant's that involve stolen guns make it more difficult to apprehend and prosecute those driving the violence. *United States v. Rocha*, No. 19 CR 625, 2019 WL 4384465, at *4-6 (N.D. Ill. Sept. 11, 2019) (Fuentes, M.J.) (discussing the danger the community presented by possession of firearms that are not traceable by law enforcement). Because there is a substantial need for general deterrence in cases like this one, a high-end Guidelines sentence is warranted.

### B.    Supervised Release

The government believes a term of supervised release of three years is warranted for the same reasons a high-end Guidelines term of imprisonment is warranted. *See United States v. Armour*, 804 F.3d 859, 868 (7th Cir. 2015) (holding that a district court's justification for imposing a term of imprisonment can also apply to a term of supervised release); s*ee also United States v. Bloch*, 825 F.3d 862, 869-72 (7th Cir. 2016) (courts are not required to "provide two separate explanations, one for the term of imprisonment and one for the term of supervised release"). Additionally, a three-year term of supervision is warranted because: (1) defendant did not complete the prior term of supervised release imposed by this Court for his last conviction; and

---

[5] U.S. Sentencing Commission, *Annual Report 2024, available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2024/2024-Annual-Report.pdf (last visited April 14, 2025).

[6]  Available at https://crimelab.uchicago.edu/wp-content/uploads/sites/2/2024/12/UChicago-Crime-Lab-EOY-Analysis-of-Crime-Trends-12.2024.pdf

(2) Judge Shah did not impose any term of supervised release to follow the sentence for defendant's supervised release violations.

### C.    Fine / Restitution

The government agrees with Probation that restitution is not at issue and that defendant's lack of assets make a fine inappropriate in this case. PSR ¶¶ 113-114.

## V.    CONCLUSION

The government respectfully requests that the Court impose a 41-month sentence of imprisonment and three-year term of supervised release.


Dated: May 5, 2026                                  Respectfully Submitted,

                                                    ANDREW S. BOUTROS
                                                    UNITED STATES ATTORNEY

                                        By:    /s/ *Michael Maione*
                                               Michael Maione
                                               Assistant United States Attorney
                                               United States Attorney's Office
                                               219 South Dearborn, 5th Floor
                                               Chicago, Illinois 60604
                                               (312) 353-5300